Tamnu v. Garland. Mr. let's see who's going first here. Who is going first? Very good. Danielle. Is that right? Okay, I have here Daniel, but maybe that's how you spell your name. No, it's two L's and an E. Two L's and an E. It's correct on that one. I apologize. No problem. Ms. Oswald, please proceed. May it please the court, honorable judges, I represent the petitioner in this case, Pauline Tumney. It's an immigration case, an asylum case specifically based on a particular social group and also her imputed and counsel for the respondent agree that a remand is necessary in light of certain changes that have occurred. In particular, the granting of TPS, which was granted by Department of Homeland Security in April 2022. And was the BIA aware of the TPS? It was issued two months before their decision. So it's not new evidence? It's not new evidence then if it was issued before their decision? No, I'm saying TPS came two months, I think, after their decision. Two months before. Before. So it's not new evidence if it came before their decision? Yes. So do you think the BIA erred in some way with respect to the TPS? I think that they erred on a lot of things. Well, with respect to that. They remanded the case previously and I think that they erred on TPS and also there's another new case, AB, which came out later. Okay, so how did they err on TPS? TPS, it seemed to me, was one of the points that your brief stressed pretty strongly, that there was a designation, I forget what TPS stands for, but essentially a declaration of danger in Cameroon. And so how did the BIA, which had this evidence already, how did it err with respect to the TPS? Well, TPS is temporary protective status. What it means is that there are 17 countries currently in the United States that have TPS out of I don't know how many countries in the world. I think there are over 200. It's, Ms. Tamney has actually been granted TPS just recently also so it's not that she's just eligible, she's actually been granted. What does that mean, she's been granted TPS by who? She's been granted by Department of Homeland Security so Judge Duncan, that's what. When did that happen? Pardon me? When did that happen? Just recently. I just gave the respondent a copy of what she sent me because she did it herself through a pro bono agency, I think. So when you say recently, do you mean like last week? I think it was longer than that, but I'd have to look at it. Okay, but this is back to my original question. With respect to the temporary protective status, how did the BIA err with what I believe is affirming, if that's the right word, the denial of the motion to reopen? Well, they didn't address it, but they also did say there was changed country conditions. They also didn't address that the judge basically had used the wrong standard, which all the cases, Nunez and all the cases cited, log. I'm just trying to get at what the errors you think that were committed, because we're a court of appeal, so we will certainly consider errors that were made by either the agency or the court below. And so you think there was an error with respect to the temporary protective status designation? I think that's one of the errors. Does our standard of review change because TPS is involved, or is it still substantial evidence? It's still substantial evidence standard. So TPS is granted to Cameroonians, TPS is not granted to Cameroonians. We're still weighing whether the evidence compels a contrary conclusion. Well, TPS specifically means that they have found that right now the country conditions are so untenable, and this is what the judge erred on and the BIA erred on, that the court said that there's a standard of unable or unwilling, and the judge said they certainly weren't unwilling, and he never even looked at the unable, but there's an or in there. You're talking about protecting her from the civil— From the separatist fighters and also protecting her from the government, because she was arrested three times. Let me ask it this way. Does the TPS designation for Cameroonians generally change the individual case that we have before us? It does, because TPS means, number one, they can never deport her. Okay, well, hold that aside. I'm just talking about the evidentiary burdens. If we're still looking for substantial evidence, TPS is not some blanket conferral that then obviates whatever's in the record as far as this individual— It is not, but it's a material change, and it's a change in circumstance. But again, we're reviewing the BIA's conclusion that it was not, for substantial evidence, was not a material change. TPS was not considered, and it is a material change, because when they grant TPS, they're saying the separatist fighters are so strong that the government can no longer control them and that women are being killed and beheaded. That evidence was before the BIA, before it made its decision, so we are reviewing the BIA's decision, as Judge Wilson says, under a particular standard of review. I don't think it is open to us to say there is TPS status, therefore the BIA erred. I think TPS shows that there was a change country condition. That's clear. But again, that's the BIA's province to weigh that evidence and conclude one way or the other. We only review that conclusion for substantial evidence, right? But I think TPS is the substantial evidence. Let me ask this related question. Does the fact that Ms. Tamnew has been granted TPS status, how does that change the case? It shows that she is being protected by the government here in the United States, Department of Homeland Security. But does it change whether we review her asylum claim, her CAT claim, her withholding of removal claim? In other words, does it moot the case, or is it just something out here that however we weigh this petition for review, it's unrelated? Does that make sense? It does, Your Honor. In other words, we can conclude that, well, the BIA got it right. We don't seek substantial evidence here to compel the opposite conclusion, so her claims fail. Whether she gets deported or not under the TPS designation is a different analysis that we don't get to. I think TPS is one of the vital components. I certainly don't think it's the only component where there is substantial error on the evidence. Another way to ask it is if and when TPS is canceled, we'll use that word, if her claims fail, then she could be deported. But until that time, she won't be. Those are independent inquiries. They're two independent inquiries. Correct. Okay. So you've identified the failure to, I'll state it for you, the failure to consider the TPS designation as one of the errors made by the BIA. What other errors do you say were made by the BIA that would necessitate reversal, if that's the right term, by us? That they applied the wrong standard under motions to reopen. They applied the B4 standard instead of the B3 of 8 CFR 1003.23. You think they should have applied which one now, B4 or B3? They applied the B4, and B4 requires a proof of changed circumstances and also proof that how that has affected since the case was heard, whereas her case is under a B3 standard, which is very different and requires proof that there is evidence, which there is in the new professors and the press releases from the Embassy of Cameroon, all the documentation that was submitted in the motion. There's evidence that the government can no longer, cannot control the separatist fighters, and she's in a unique position, having grown up in the southwest, which is Anglophone area, but yet is a Francophone. And there's also the new evidence is the fact that she, that women specifically now are being targeted as civilians by the separatists, which they were previously not. So that's new evidence. So you think the B3 standard should apply and not the B4 standard? So the B4 standard is a higher standard. Is that a yes or no? B3, you say B3 should apply, not B4? I'm saying B3 should apply, right? Okay. Not B4. And did you argue for that standard before the IJ and the BIA? I didn't represent this case. Was that argued before the BIA? I think it was, yes. It was. Okay. All right. So wrong standard. I get that with respect to change conditions. What other error do you think the BIA made? They didn't address, the judge never addressed the cat issue. Well, there is a reference to the cat. Okay. So it didn't address cat. But there is a reference to the cat. The BIA, Judge Duncans, didn't say that they agreed with the judge's decision. But as the respondents said, we're not sure what they agreed with because the judge never made a decision. Go ahead, please. How much is required? You know, I understand the Fifth Circuit precedent requires some analysis, but we don't really specify what that should be. So clearly there was reference to it. Is that sufficient or does it have to be a detailed opinion? The BIA remanded it before because the judge gave a one-sentence decision, which didn't address anything, and then he gave another decision when they remanded it before. So I think it at least requires some acknowledgment of what was briefed. I thought there was an acknowledgment that basically to the effect of the changed conditions, changed country conditions, weren't enough to revisit the cat claim either. I mean, basically we're not in a vacuum. The IJ had already fully discussed and analyzed the cat claim on remand,  Correct, Your Honor. The BIA was not writing on a blank slate at that point when it came back. No, but he was, again, applying the standard. For example, he never applied the unable standard at all. He only applied the unwilling. He said they were not unwilling because they helped. They shot all these separatists and that enabled her to be released. And he said, well, the fact that they're imprisoning people and putting them in jails, that shows that the government's trying to do something, but it doesn't account for who they're putting in prison, which are people who are often political opponents under a dictator that's existed for 34 years. So that factor is not held into account. Okay, so the third error you mentioned was the BIA did not address the cat claim sufficiently under our precedents. Anything else? Yes. They did not also address the fact that the prima facie evidence would then just be eligibility for the relief and protection that she seeks. It would not be the standard which they applied, which was how would this make a difference to the case when it was heard before the judge, even though the judge did acknowledge that it was new evidence, it was not previously available and couldn't have been obtained. But it does not, he said that it wasn't material, which clearly it's different kind of evidence about how the separatists treat women. It's not other evidence of atrocities based on a dictatorship. So it was different kind of evidence. And he didn't address that. And the well-founded fear of future persecution, I think, is absolutely now a matter that has to be addressed because of TPS and the changed circumstances that have occurred that the BIA agreed that there was changed circumstances. And I think both parties in this briefing agree that there are changed circumstances, which is not the standard between B-3 and B-4 is quite different. You don't have to go back and look at the other case and do an FSN analysis of how would that have made a difference in this case. I think we now know based on what's happening and the fact that she in particular was a woman who was held and abused by the separatists. But all that happened before her case initially worked through the IJ and the BIA, correct? Well, that was her case at the BIA and before the judge. It's the same case. Okay, great. Anything else? Sorry. No, we would just ask that the court remand and the alternative counsel and I may be doing a joint motion to actually get this back to the judge in some way. Okay, great. We'll have five minutes for rebuttal. Mr. Ross. Good afternoon, Your Honor. May it please the court, my name is Jonathan Ross and I represent the United States in this matter. The court should remand proceedings because in a case like this where the agency hasn't necessarily erred, but the interest of justice will best be served by remanding to the board to allow it to clarify its findings in greater detail. Okay, you put your finger on my basic problem here because you said where the board has not necessarily erred. I walked with Ms. Oswald through the various claims of error with respect to TPS, with respect to the wrong standard, B3 versus B4, with respect to a failure to address CAT. Do you agree with her on any of those points that there was error? Yes, Your Honor, you do put your finger on the point because while there's… There's a lot that we agree with. We do not agree with the points that she raised as being an instance or instances of the board committing error, and the government seeks remand here because we seek greater clarification on the reasons below. Indeed, the board's reasoning may be sufficient, and specifically with the example of TPS, it's incredibly illustrative. Yeah, but we have a standard of review here. I mean, we are a court of review, and so I'm not sure how I write an opinion that says to the BIA, you know, we don't think you made any errors, but we sure would like some more clarification. I'm just not sure what authority… Why do we have the authority to do that? What is your best case or statute or regulation for this court's authority to remand, which I have to assume means in some sense reversing or vacating a lower court decision or an agency decision? Your Honor, the Article III of the Constitution and made relevant through statutory references as well, which I don't have available with me right now, but I'm happy to supplement with a Rule 28 letter, there is a tremendous amount of authority that's vested in this court to remand cases, not only for error, but especially in instances where the interests of justice are best served. And it really is critical to note here that the DHS designation of Cameroon as a TPS country, Temporary Protective Status… Do you not contend also that we lack jurisdiction? In other words, you mentioned Article III. Are you saying there's no case or controversy? That is the argument that we make in our brief.  Do you have the jurisdiction because there is a final order of removal in this case? And indeed, Judge Wilson, your point before about TPS being a separate and discreet grant, it does not bear on any relief potentially available to Ms. Temu through a grant of asylum, withholding, or cap protection. However, it is important that this court is satisfied that the board fully addressed everything that was before it I do have jurisdiction. You do have jurisdiction. Yes, Your Honor. And so we can remand, but you mentioned TPS. I mean, I guess the petitioner can't file a motion to reopen based on TPS if it's a changed condition because the BIA knew about TPS at the time her case was already being evaluated for reopening, correct? Well, and that's the point that causes the government in this instant, Harper. My colleagues and I stand before this court… the motion to reopen, correct? So again, back to Judge Duncan's point, how can we not evaluate this on appeal based on our usual standard of review? Yes, and the standard of review here is abuse of discretion. It was a motion to reopen. Substantial evidence, is it not? The factual determinations are reviewed for substantial evidence. However, the denial of a motion to reopen is under the very deferential to the government abuse of discretion standard. However, the board's decision with respect to TPS that was issued only two months prior to its decision is a sea change. It recognizes that it is a recognition by the federal government that a sovereign nation is incapable of keeping its people safe. We find it that the interest of justice would best be served by the board having an opportunity to do one of two things, to either say that the—to make clear that it either considered that designation of TPS and it deemed that it didn't bear on Ms. Tamu's motion to reopen or that it forgot about it completely, in which case that would be erroneous. Well, Judge Duncan asked the question in terms of best case or best authority. You mentioned Article III.  There's a couple parts to that question that I'd like to— It's a long question. I'm sorry. Yeah, of course, that I'd like to address. And there's a statutory provision. Like I said, it's not Article III itself, but it's power that's granted to the court through Article III and enumerated in a statutory context that I'm happy to supplement. But really, at its core, the issue here is can the board can this court be satisfied with the board's decision that it did consider the substantial evidence? This is not the same evidence that Ms. Tamu submitted with her motion to reopen. For example, the recognition— That sounds like you're saying there's an error in their view of the evidence, but you just told Judge Duncan you don't agree with any of the errors asserted. Now you're saying there wasn't substantial evidence? Is that what you're saying? If I can be so bold, we don't know if there was an error. If, for instance, the board didn't acknowledge the fact that TPS was— if it didn't acknowledge TPS, then that could potentially be an error. However— Well, I'm not sure you can be that bold because, again, I go back to the substantial evidence standard of review. I don't know that we parse this piece of evidence and that piece of evidence and another piece of evidence for substantial error or substantial evidence as to each one. We look at the record as a whole, do we not? That's absolutely correct, Your Honor. You're considerably less bold than the way you want to go. I apologize. No need to apologize. I'm trying to figure out if we can support this in law. Absolutely. It's important to recognize that my colleagues and I stand before this court on multiple occasions, and one of our most favorite arguments to rely on is that the board need not identify every single piece of evidence that it uses to base its decision. However, TPS is substantial. The designation of TPS is a giant sea change in what U.S. domestic and foreign policy views Cameroon, and its omission from the board's decision is slightly questionable. And so we desire to know whether the board considered this evidence and found that it didn't bear or if it disregarded it completely. I have, I guess, sort of a two-part question. The first is this, the TPS designation came out two months before the board's decision? Yes, Your Honor. Whose burden was it to bring to the BIA's attention the TPS designation? Traditionally, the petitioners. Okay. Was that done in this case? It absolutely was not done, Your Honor. So there's a waiver. I've also heard the government often stand before us and make forfeiture arguments, right? Because it was not done in this case. That's correct. All right. So my second question is the fact that you say, and I credit this, that the TPS represents a sea change in our understanding of what's happening in Cameroon. Does anything prevent the executive branch of the federal government from refusing to deport Ms. Temnue? I'm sorry, say that again? Can the executive branch just decide, we're not deporting her? Are you saying except for TPS? No, just can you say, you know, we understand the BIA said this. We're not going to deport her. In this specific context, the government cannot deport or remove Ms. Temnue because she has been, we just learned today that she's been granted TPS. Yeah, that's why I'm asking this. So what does that mean for this case? I mean, that may, I don't know. That may be a genuine mootness. The government is caught flat-footed in this scenario, and honestly, we don't quite know how to present that. What does that mean? I mean, I'm not, I understand. I used to be a lawyer for the government. I understand all about being caught flat-footed. So let's assume that TPS status was indeed granted to her. Tell us, what does that mean? Well, in one regard, the court is certainly free to adjudicate the petition for review. If over the consent motion for remand, the court decides to either grant or deny the petition for review, ultimately she still has a final order of removal. Yeah, but who granted? If, in fact, TPS status has been granted, who did that? And there's no contention that TPS status has been granted. It was affirmatively granted by USCIS as opposed to defensively through DHS. Okay. So USCIS has the authority to do that? That is correct. If, in fact, that happened, what does that mean for her status? That means that she has temporary status in the United States. She cannot be removed, and she can seek work authorization. Okay. And so I guess we will need 28 J letters explaining if this, in fact, has happened, because we're just hearing about it for the first time, I think, and explaining from the government's perspective what that means with respect to this appeal. Right. Because, I mean, you have made the argument in your brief that there's no longer a case or controversy, which, if I may, I mean, that suggests to me that the government no longer intends to remove Ms. Temnue. That's what I take it to be, a lack of case or controversy. Is that, in fact, the case? No, Your Honor, that's not a case. Okay. So there is a case or controversy. I mean, you are adverse to each other. We are adverse in that we both seek remand. However, the basis for seeking remand— Well, that's different. I mean, both seeking remand, you can still be adverse and seek remand, right, because you still intend to remove Ms. Temnue. That's correct. Yes, Your Honor. You're still adverse. There's still a case or controversy. It's still the government's prerogative to remove her if and when it's ready and if and when TPS concludes. That's correct, Your Honor. Is it fair to say TPS just puts a hold on Cameroonians who are granted TPS status? That's very accurate, yes. In the instance with El Salvador, for example, El Salvadorians who receive TPS status, that's been renewed many times over the last 20 years. It requires a yearly renewal. The DHS actually just renewed Cameroon their TPS status, so it's been extended further. Okay. Well, I mean, obviously we will need some further briefing on this from both sides because, I mean, I've very recently read the briefs in this case, and although there was references to TPS designation, I don't think that it was fleshed out, and it seems like there may have been new developments. I think that the court would benefit from that. Respectfully, we move to perhaps we suggest that the court allow us supplemental briefing rather than a 28-J letter. Yes, we'll confer and issue an order. Very good. Thank you. Let me ask, the panel also mentioned something about a possible another motion to remand. Can you give any reference to what she was referring to? She misstated a, with all due respect to my colleague, she misstated a point that we previously discussed prior to the panel beginning the session. I am not prepared to offer any type of remand for my client. I believe what she was referring to is a promise that I made to her to go to my client, the Department of Homeland Security, and to seek their position on a joint motion to reopen to the board, which would, in turn, take some time to adjudicate, but which would, in turn, if they did reopen it, would actually strip this court of jurisdiction over the proceedings. But it's also important to note that Ms. Tamlo is free to unilaterally move to reopen proceedings. Although she's statutorily barred, it's still her prerogative to do so. Okay. And you have time remaining. You may be free to. Yes, Your Honor. Thank you. I just want to briefly end on the point and not to belabor the point anymore, but the designation of TPS status truly is unique in this instance, particularly that it came just two months prior to the board's issuance of its decision. And remand would afford the board the opportunity to clarify whether it considered the TPS designation and decided that it didn't bear on Ms. Tamlo's motion to reopen or if it actually didn't consider it at all. Further, I think that the B-3 and B-4 is a bit of a red herring in this case because although the immigration judge did apply the wrong standard here, the board corrected that. And this court reviews the board's decision to the extent that it relies on the immigration judge's decision, and it did not rely on the immigration judge's decision in that regard. It properly evaluated it under B-3, which was really the crux of the issue being, did Ms. Tamlo meet her burden to show prima facie eligibility for asylum, statutory withholding of removal under the INA, and cap protection? But there again is where TPS comes into play because TPS does have your question before about whose burden is it to present that evidence. It's very reasonable to look at this change as being so substantial that it altered the entire environment by which the case was operating in, essentially rendering the record stale. Okay, I hear what you're saying. But as you said earlier, the argument wasn't even made with respect to TPS. The argument wasn't made, but it is still representative of an environmental— Does it make sense—forgive me, I'm not familiar with the ins and outs of the administrative procedure here in front of the BIA, but does it make sense to ask whether the TPS designation is part of the record before the BIA? It does make sense. Yes, absolutely, it does make sense to ask that. And really the alternative way, other than Petitioner putting forward a motion saying, there's been one more development since my initial motion to the immigration judge back in 2020, and that's merely just asking the board to take judicial notice, which they could have done, would have probably been more, in terms of administrative law, probably the more easy procedural approach to just take notice of it. I don't recall what year this was when this was being adjudicated, when the instant BIA decision was being adjudicated. I mean, would it be a common practice for the government, for the Department of Homeland Security, to raise this sua sponte and say, TPS, see change? I can't speak for DHS's procedures and how they operate before the board. However, I can say that at the appellate level, it would not be completely against governmental practices to say that even the Court of Appeals should take notice of this substantial change. Well, I mean, yeah, you're effectively doing that now, but that was not done before the BIA. It was not, no, Your Honor. All right. And just finally, too, one other point that I'd like to just flesh out slightly in my last three minutes is that the court's handling of the future harm, or the agency's handling of future harm, that is specifically future persecution differentiated from future torture, that portion of the decision would also benefit from additional clarification from the agency. That's why we're advocating a full remand and not just an isolated remand to discuss one or two things, because it really is important to know how the grant of TPS would bear on her application for statutory withholding of removal, as well as protection under the Convention Against Torture. The immigration judge's decision really solely focuses on asylum. And again, this court reviews the board's decision, and the board kind of cleaned up the record to also include withholding of removal and CAT protection, but it does so only in the context of unwilling and unable. And there really is more elements to that, specifically with CAT, that really would benefit from additional. Very well, the board may have considered these points, but this court would be confident in the agency's decision if it actually went into some detail about that. So not hearing any further questions from the panel, thank you for your time, and the government rests on its motion. Thank you. Thank you. Ms. Oswald, you have five minutes for rebuttal. Thank you, Your Honor. I would agree with Mr. Ross that the TPS does also affect well-founded fear of future persecution, which is one of the ways that you can win asylum, as well as past persecution. So it's a different way of winning asylum. Because clearly, in this case, she was harmed by the government on two arrests and by the separatists on one arrest. So both have been involved in harming her, and especially now with the situation with TPS, there are specific statements that say that the government is totally unable to control the situation of her harm. In addition, I would just say that this case is—the BIA would certainly know of TPS. I don't know that— So it wasn't argued? It was argued in— The government just said it wasn't argued. Do you disagree with that? I don't—I think the briefing came before TPS was granted, so that's the issue. So it wasn't argued in the brief specifically. But the court, the BIA, has in the past certainly taken judicial notice on their own of things like TPS, because it's rare. And TPS is not—it's an exceptional relief. And I didn't—I actually was not aware that it had just been renewed, because I was going to say that in December, her TPS expires, because it's only good for 18 months, and when it gets renewed, it's only for 18 months at a time. So it's—as Judge Wilson said, it's sort of like a hold position. Certain countries, very few, like El Salvador, have had it continuously for 20 years, but that doesn't happen with any other country, so it's sort of an anomaly. And we would also request that the BIA not remand just for TPS, but on all the other factors. I think it's important that they clarify, which they did not also, the motion to reopen standard when it's filed timely, as opposed to changed country conditions when it's filed untimely. In this case, she happens to have the changed country conditions, but for future cases, that would certainly be an important point to clarify, I think, as to what standard to use. And we would ask that the Court consider what is in the record and what has been presented, and I thank you for your time, Your Honors. Thank you, Counsel. The panel will confer and issue an order shortly following this argument about supplemental briefing. Thank you. Thank you.